IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

DITRELL TAYLOR,

*Defendant*.

CRIMINAL No. ELH-20-0392

**MEMORANDUM OPINION**

Ditrell Taylor was indicted on November 12, 2020, and charged with possession of a firearm by a convicted felon, *i.e.*, a loaded .40 caliber handgun, in violation of 18 U.S.C. § 922(g).  ECF 1.  On April 11, 2022, pursuant to a Plea Agreement (ECF 37), Taylor pled guilty to an Information (ECF 32), charging his with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).  The offense carried a mandatory minimum term of imprisonment of five years, with a maximum of life imprisonment.  ECF 37, ¶ 3.  Pursuant to Fed. R. Crim. P. 11(c)(1)(C), defendant stipulated to a sentence of 120 months in prison.  *Id.* ¶ 9.  And, that is the sentence he received on June 24, 2022.  ECF 41; ECF 43 (Judgment).

Taylor, who is now pro se, has filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  ECF 45; ECF 45-1 (the "Motion").  He also seeks a sentence reduction under 18 U.S.C. § 3582(c)(2), *i.e.*, Amendment 821 to the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines").  *Id.*

In his motion for compassionate release, which is a Form AO 250, Taylor checked two boxes (1) "The caregiver of my minor child or children has died or become incapacitated and I am the only available caregiver for my child or children," and (2) "There are other extraordinary and compelling reasons for my release." ECF 45 at 4.  As for "other extraordinary and

1

compelling reasons," Taylor asserts, in part, *id.* at 5: "DRUG TRAFFICKING is not a crime of violence and I should not have the 924C." In an attachment to his Motion, Taylor argues that he is eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2) because he received two criminal history points under U.S.S.G. § 4A1.1 for committing the instant offense while under a criminal justice sentence, which elevated him from criminal history category V to VI. See ECF 45-1 at 1–2. Taylor claims he would be a criminal history category of V under Amendment 821. *See id.*

The government opposes the Motion. ECF 50. According to the government, Taylor "is not eligible for a reduction under 18 U.S.C. § 3582(c)(1)(A) because he cannot show "extraordinary and compelling reasons" for his release." *Id.* at 2. Further, the government claims that defendant "is not eligible for a reduction under 18 U.S.C. § 3582(c)(2) because his criminal history category would be the same under the amended guideline, and in any event, his criminal history category was not relevant in determining his guideline sentence under § 924(c)." In addition, the government contends that, "even if Taylor could establish eligibility under either provision, a reduction in his sentence would be inconsistent with the factors outlined in 18 U.S.C.

§ 3553(a), namely, the need to reflect the severity of his crimes, account for his pattern of criminal

behavior, deter similar crimes by him and others, and protect the public from future violent crimes

by him." *Id.*

Taylor did not reply. And, the time to do so expired.

However, by Order of April 23, 2025 (ECF 53), I asked the government to provide authority for its assertion in ECF 50 that drug conspiracy under 21 U.S.C. § 846 qualifies as a drug trafficking crime for purposes of 18 U.S.C. § 924(c). The government responded the same day. ECF 54. In ECF 54, the government asserts an argument that it "neglected to include in its original opposition." *Id.* at 1. In particular, the government asserts that defendant is actually attacking the validity of his conviction by arguing that his conviction under 18 U.S.C. § 924(c) is improper, because drug trafficking is not a crime of violence. *Id.* at 2. Therefore, the government contends that § 2255 is "'the exclusive remedy'" for such a claim and defendant cannot "'sidestep'" that statute by the "'mechanism'" of compassionate release. *Id.* at 1-2 (quoting *United States v. Ferguson*, 55 F.4th 262, 270, 272 (4th Cir. 2022)).

Thereafter, by Order of April 24, 2025, I informed Taylor of his right to respond to the government, due by May 15, 2025. ECF 55. Mr. Taylor did not respond.

The Office of the Federal Public Defender has advised that it does not intend to supplement the Motion. ECF 47. Nor does it seek appointment as counsel in the case. *Id.*

Defendant is presently incarcerated at FCI Gilmer. He has a projected release date of December 4, 2027. *See* https://www.bop.gov/inmateloc

No hearing is necessary to resolve the Motion for Local Rule 105.6. For the reasons that follow, I shall grant the Motion, in part. I shall reduce defendant's sentence by twelve months.

## I. Factual Background

As noted, on November 12, 2020, Taylor was indicted on the charge of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g). ECF 1. On April 11, 2022, pursuant to a Plea Agreement (ECF 37), Taylor pled guilty to an Information (ECF 32), charging him with

possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

As part of the Plea Agreement, Taylor admitted to the following facts, ECF 37 at 9-10:

On May 1, 2019, Detective McLaughlin of the Baltimore Police Department (BPD) was conducting surveillance via a closed-circuit television (CCTV) camera in the area of the 100 block of S. Calverton Road, which is known to be a high-intensity drug trafficking area. Det. McLaughlin observed a black male (Co-Conspirator 1) go to a suspected ground stash location in front of 125 S. Calverton Road and then conduct a suspected hand-to-hand drug transaction with two unidentified females.

A short time later, Det. McLaughlin observed a black male, later identified as the Defendant, Ditrell Taylor, enter a vacant dwelling at 119 S. Calverton Road, exit, and walk toward a parked sport utility vehicle (SUV). Det. McLaughlin observed the Defendant bend down, reach into his waistband area, and place an object on or about the SUV. Det. McLaughlin believed the object may be a gun. While the Defendant was reaching down toward the SUV, an unidentified black male in a blue coat stood next to him. After placing the object on or about the SUV, the Defendant and the unidentified black male in the blue coat walked down the street and met with Co-Conspirator 1. Co-Conspirator 1 then walked back to the suspected stash location at 125 S. Calverton, returned, and conducted a suspected hand-to-hand drug transaction with the unidentified black male in the blue coat. At this point, Det. McLaughlin believed that the Defendant was serving as a lookout for Co-Conspirator 1 while Co-Conspirator 1 conducted drug sales; that the Defendant had stashed a weapon on or about the SUV; and that the Defendant had directed a drug customer (the unidentified black male in the blue coat) to Co-Conspirator 1 for a drug transaction.

Det. McLaughlin notified an arrest team of his observations. Co-Conspirator 1 was placed under arrest. Meanwhile, another officer responded to the suspected ground stash location in front of 125 S. Calverton, where he recovered a clear plastic bag containing four black-top vials containing suspected cocaine. The drugs were later submitted to the BPD drug laboratory and tested positive for cocaine. The officer then went to the SUV where Det. McLaughlin had observed the Defendant place the object from his waistband area. From the tire of a vehicle directly behind the SUV, the officer recovered a gold and black Sig Sauer Model P229 .40 caliber handgun with serial number 55B070367, loaded with one round in the chamber and 11 rounds in the magazine. Det. McLaughlin confirmed that the area where the officer recovered the firearm was the area where he had seen the Defendant bend down. Det. McLaughlin also confirmed that he had not observed anyone else go to the location after the Defendant placed the object there.

The officer's recovered [sic] of the drugs and gun were captured on his body worn camera. The CCTV footage was recorded and preserved. It shows that the Defendant did, in fact, bend down in the area where the weapon was recovered and remove an object resembling a handgun from his waistband area.

The Defendant admits that he possessed the firearm in furtherance of a drug trafficking crime, namely, conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846.

In the Plea Agreement, the parties agreed that the Guidelines correspond to the mandatory minimum term of imprisonment of five years, pursuant to U.S.S.G. § 2K2.4(b). *Id.* ¶ 6. However, the parties stipulated under Fed. R. Crim. P. 11(c)(1)(C) that a sentence of ten years was the appropriate disposition of the case, taking into consideration the nature and circumstances of the offense, defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). *Id.* ¶ 9.

A Presentence Report ("PSR") was prepared in connection with sentencing. *See* ECF 42 (Amended Presentence Report). It showed that Taylor had 12 criminal history points, *id.* ¶ 25, which equates to a criminal history category of V. However, Taylor's criminal history score was increased by two points, pursuant to U.S.S.G. § 4A1.1(d).  This is because defendant was on probation for two Maryland felony drug convictions when he committed the instant offense. *Id.* ¶ 26. The resulting criminal history score was 14 points, putting defendant in criminal history category VI.  *Id.* ¶ 27.

The criminal history calculation was based on Taylor's six Maryland felony drug convictions, as follows: (1) a 2012 conviction for Conspiracy-CDS-Distribute-Narcotics, for which he received 1 point; (2) a 2014 conviction for CDS-Possession with Intent to Manufacture/Distribute/Dispense-Narcotics, for which defendant received 1 point; (3) a 2015 conviction for CDS-Possession with Intent to Manufacture/Distribute/Dispense-Narcotics, for which Taylor received 3 points; (4) a second 2015 conviction for CDS-Possession with Intent to

Manufacture/Distribute/Dispense-Narcotics, for which he received 3 points; (5) a 2016 conviction for CDS-Possession with Intent to Manufacture/Distribute/Dispense-Narcotics, for which defendant received 2 points; (6) and a 2017 conviction for Possess/Receive CDS While Confined/Detained, for which Taylor received 2 points. *Id.* ¶¶ 19–24.

As to the offenses set forth above, defendant received a sentence of twelve years in 2012, virtually all of which was suspended. *Id.* ¶ 19. For the 2014 offense, he received a ten-year sentence, almost all of which was suspended. *Id.* ¶ 20. His probation was later revoked. For the 2015 conviction, he received a sentence of fifteen years, with all but three years suspended. *Id.* ¶ 21. The second conviction in 2015 was resolved with his other 2015 conviction, and he received a concurrent sentence. *Id.* ¶ 22. Defendant received a one-year sentence in 2016 for another offense committed in 2015. *Id.* ¶ 23. And, for the conviction in 2017, he received a sentence of one year and one day. *Id.* ¶ 24.

As indicated, the Guidelines were not tied to an offense level or a criminal history score. Rather, as indicated, the Guidelines corresponded to the mandatory minimum term of imprisonment required by statute, *i.e.*, 5 years, under U.S.S.G. § 2K2.4(b). ECF 42, ¶¶ 16, 73, 74.

At Taylor's sentencing on June 24, 2022, the Court adopted the PSR's Guidelines and Criminal History calculations, without objection from the defense. *See* ECF 50-1 (Sentencing Transcript), at 3–4. It was undisputed that the Guidelines sentence was five years, pursuant to U.S.S.G. § 2K2.4(b). *Id.*

Ultimately, the Court sentenced Taylor to ten years of imprisonment, in accordance with the terms of the parties' "C Plea." *Id.* at 16–21. The Court explained that although the sentence was above the Guidelines sentence of five years for the § 924(c) offense, it was actually five

years below the 15-year mandatory minimum that might have applied had the government pursued the original § 922(g) charge and proved that Taylor qualified as an Armed Career Criminal. *Id.* at 18–19 (pointing out that Taylor "certainly was at substantial risk of being labeled an armed career criminal" based on his prior record). The Court also explained that a ten-year sentence was warranted to account, among other things, for the serious nature of the offense; Taylor's "significant prior record"; his prior "lenient" treatment by the criminal justice system; the need for both general and specific deterrence; and the need to protect the public. *See id.* at 16–21.

## II. The Legal Standard

### A. Compassionate Release

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Moody*, 115 F.4th 304, 310 (4th Cir. 2024); *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. 2024); *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023); *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *United States v. Bond*, 56 F. 4th 381, 383 (4th Cir. 2023); *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022); *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022); *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020), *abrogated on other grounds by United States v. Troy*, 64 F.4th 177 (4th Cir. 2023); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." *See* 18 U.S.C. § 3582(c)(1)(B); *see also Jackson*, 952 F.3d at 495.

A statutory exception is codified at 18 U.S.C. § 3582, which was first enacted as part of the Sentencing Reform Act of 1984. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). It

is commonly termed the "'compassionate release exception.'"  *Moody*, 115 F.4th at 310; *see United States v. Osman*, 2024 WL 3633573, at *3 (4th Cir. Aug. 2, 2024) (stating that a motion under § 3582(c)(1)(A) is "commonly referred to as a motion for compassionate release . . . ."). Specifically, 18 U.S.C. § 3582(c)(1)(A)(i) authorizes a court to modify a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction."  *Hargrove*, 30 F.4th at 194.

As originally enacted, the compassionate release provision permitted a court to alter a sentence only upon motion made by the Director of the BOP.  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984).  This meant that a defendant seeking compassionate release had to rely on the BOP Director for relief.  *See Bethea*, 54 F.4th at 831; *see, e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866–67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).  However, the safety valve of § 3582 languished, because the BOP rarely filed such a motion on an inmate's behalf.  As a result, compassionate release was an infrequent occurrence.  *See Hr'g on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In 2018, with the passage of the First Step Act ("FSA"), *see* Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) (codified as 18 U.S.C. § 3582(c)(1)(A)), Congress "broadened" the authority of courts to grant sentencing modifications pursuant to 18 U.S.C. § 3582.  *Malone*, 57 F.4th at 173. In particular, the FSA authorized a court to grant compassionate release "upon motion of the Director of [BOP], *or upon motion of the defendant after the defendant has fully exhausted all administrative rights* to appeal a failure of the [BOP] to bring a motion on the

defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first.  18 U.S.C. § 3582(c)(1)(A) (emphasis added); *see also Ferguson*, 55 F.4th at 268; *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); *McCoy*, 981 F.3d at 276.  In other words, a federal inmate is now able to file a motion for compassionate release directly with the court, as long as the inmate first exhausts administrative remedies.  *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020).

However, under 18 U.S.C. § 3582(c)(1)(A), the court may modify the defendant's sentence only if two criteria are satisfied.  *Brown*, 78 F.4th at 128; *Bethea*, 54 F.4th at 831.  Specifically, "the district court must conduct a two-step analysis."  *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024); *see also Bond*, 56 F.4th at 383.

The first step actually consists of two parts.  The court "must determine: 1) whether extraordinary and compelling reasons warrant . . . a [sentence] reduction; and 2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *see Moody*, 115 F.4th at 310; *Davis*, 99 F.4th at 653; *Bond*, 56 F.4th at 383; *Bethea*, 54 F.4th at 831; *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam), *cert. denied*, 142 S. Ct. 383 (2021).

If that first step is met, the court then proceeds to the second step.  Under the second step, the court must determine whether release is appropriate in light of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent those factors are applicable."  *Bethea*, 54 F.4th at 831; *see Moody*, 115 F.4th at 310; *Malone*, 57 F.4th at 174; *Hargrove*, 30 F.4th at 194; *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647; *Kibble*, 992 F.3d at 330.  "Importantly, a court assessing a compassionate release motion is entitled to consider the § 3553(a) factors '[o]nly after' conducting the first step's analysis."

*Osman*, 2024 WL 3633573, at *4 (citations omitted) (alteration in *Osman*); *see Malone*, 57 F.4th at 173 (stating that the district court may consider the § 3553(a) sentencing factors only after determining that extraordinary and compelling reasons warrant a sentence reduction and that a reduction is consistent with the Sentencing Commission's policy statements).

Generally, "the district court enjoys broad discretion in conducting a § 3582(c)(1)(A) analysis." *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647. Notably, "it weighs against an abuse of discretion—and is viewed as 'significant'—when the same judge who sentenced the defendant rules on the compassionate release motion." *Bethea*, 54 F.4th at 834; *see United States v. Gutierrez*, 2023 WL 245001, at *5 (4th Cir. Jan. 18, 2023); *Hargrove*, 30 F.4th at 200; *High*, 997 F.3d at 189.

As the Fourth Circuit has recognized, "when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see Davis*, 99 F.4th at 653–54. The Policy Statement codified at U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" ("Policy Statement"). "[U]ntil recently," that Policy Statement did not apply to motions filed by prisoners. *Davis*, 99 F.4th at 654; *see McCoy*, 781 F.3d at 281. The Policy Statement began: "Upon motion *of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2021) (emphasis added). Interpreting this language, the Fourth Circuit said in *McCoy*, 981 F.3d at 281, that, "[b]y its plain terms . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." Therefore, on the basis of that earlier text, the Court held: "When a defendant exercises his . . . right to move for compassionate

10

release on his own behalf, . . . § 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *Id.* (citation omitted). As a result, district courts were "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (citation omitted).

Effective November 1, 2023, U.S.S.G. § 1B1.13 was amended. *See Davis*, 99 F.4th at 654 (citing 88 Fed. Reg. 28254 (May 3, 2023)). The Policy Statement now begins: "Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2023) (emphasis added). Therefore, the Policy Statement is applicable to defendant-filed motions under § 3582(c)(1)(A). *Davis*, 99 F.4th at 658 (directing district court on remand "to revisit [the petitioner's] arguments in light of the Sentencing Commission's new policy statement outlining when and how to consider changes in law as an extraordinary and compelling reason for a reduction"). As a result, when a defendant files a motion for compassionate release, a court must ensure that any sentence reduction "is consistent with" the Policy Statement's provisions. 18 U.S.C. § 3582(c)(1)(A).

The Policy Statement provides, in part, U.S.S.G. § 1B1.13(a):

(B) IN GENERAL.—Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1) (A) extraordinary and compelling reasons warrant the reduction; or

(B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

11

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

Section 1B1.13(b) of the Policy Statement is titled "EXTRAORDINARY AND COMPELLING REASONS." It identifies multiple circumstances that, individually or in combination, may provide "extraordinary and compelling reasons" for a reduction in sentence. *See* § 1B1.13(b)(1)–(6). These include certain medical circumstances of the defendant, such as a terminal illness, "serious cognitive impairment," a medical condition that requires "specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death"; or the defendant is at imminent risk of being affected by "an ongoing outbreak of infectious disease" or "an ongoing public health emergency . . . .", § 1B1.13(b)(1)(A), (B), (C), (D); the defendant's age, along with other factors, § 1B1.13(b)(2); the defendant's family circumstances, § 1B1.13(b)(3)(A), (B), (C), (D); the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer, § 1B1.13(b)(4)(A), (B); for a defendant who received an "unusually long sentence" and has served at least 10 years of the sentence, a non-retroactive change in the law that "produce[s] a gross disparity" in relation to "the sentence likely to be imposed at the time the motion is filed . . . .", § 1B1.13(b)(6); and "any other circumstance or combination of circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)." § 1B1.13(b)(5).

Section 1B1.13(c) of the Policy Statement is titled "LIMITATION ON CHANGES IN LAW." It specifies that, "[e]xcept as provided in subsection (b)(6)," which concerns an "unusually long sentence," "a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." U.S.S.G. § 1B1.13(c).

"However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under [the Policy Statement], a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." *Id.*; *see Davis*, 99 F.4th at 654.[1]

Section 1B1.13(d) of the Policy Statement concerns rehabilitation of the defendant. It limits the weight a court may assign to a defendant's rehabilitation while serving a sentence. That section provides that, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13(d). "However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.* And, § 1B1.13(e) provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction.

Even if a defendant prisoner establishes that extraordinary and compelling reasons warrant relief, a reduced sentence does not necessarily follow. The court must then consider the sentencing factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *See Dillon*, 560 U.S. at 826–27; *Brown*, 78 F.4th at 128; *Mangarella*,

---

[1] In *Concepcion v. United States*, 597 U.S. 481 (2022), the Supreme Court concluded that a district court's general obligation "to consider [all] nonfrivolous arguments presented by the parties," *id.* at 487, required it "to consider intervening changes of law or fact in exercising [its] discretion to reduce a sentence pursuant to the First Step Act." *Id.* at 500. However, the Court acknowledged that "Congress or the Constitution [may] limit[] the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence . . . ." *Id.* at 486. "Thus," the Court noted, "Congress expressly cabined district courts' discretion [to reduce a sentence] by requiring courts to abide by the Sentencing Commission's policy statements." *Id.* at 495. It follows that, because the Policy Statement is now applicable to prisoner-filed motions for compassionate release, a court may consider intervening changes of law only in the manner that the Policy Statement prescribes.

57 F.4th at 200, 203; *Malone*, 57 F.4th at 174; *Bethea*, 54 F.4th at 833; *Hargrove*, 30 F.4th at 195; *High*, 997 F.3d at 186; *Martin*, 916 F.3d at 397; *see Kibble*, 992 F.3d at 329–30 (noting that district court must consider § 3553(a) factors when considering a motion to reduce sentence under § 3582(c)(1)(A) and district court enjoys broad discretion in conducting this analysis); *United States v. Trotman*, 829 F. App'x 607, 608 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under § 3582(c)(1)(A), the court must consider the sentencing factors under § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d at 693–94 (district court must give due consideration to the § 3553(a) factors); *see also United States v. Jones*, 2022 WL 2303960, at *1 (4th Cir. June 27, 2022) (per curiam) (noting that "a court need not explicitly make findings on extraordinary and compelling reasons where consideration of the § 3553(a) factors counsels against release"); *United States v. Butts*, 2021 WL 3929349, at *2 (4th Cir. Sept. 2, 2021) (per curiam) (noting that, even if the district court finds extraordinary and compelling circumstances, it must consider the § 3553(a) factors to the extent applicable in exercising its discretion).  Notably, the amendments to the Guidelines in November 2023 did not alter this requirement.

The § 3553(a) "factors include 'the nature and circumstances of the offense'; 'the history and characteristics of the defendant'; and the need for the sentence to 'provide just punishment,' 'afford adequate deterrence,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with . . . training, medical care, or other correctional treatment.'" *Jenkins*, 22 F.4th at 170 (quoting 18 U.S.C. § 3553(a)).  As the Fourth Circuit has observed, "'many case-specific facts fit under the broad umbrella of the Section 3553(a) factors.'" *Bond*, 56 F.4th at 384 (quoting *Jackson*, 952 at 500).  The district courts "enjoy the discretion to give additional weight to any one factor so long as they do not confine their analysis to that factor." *Davis*, 99 F.4th at

14

656; *see United States v. Friend*, 2 F.4th 369, 381–82 (4th Cir. 2021). And, in weighing the § 3553(a) factors, the court may consider the terms of a plea bargain. *Bond*, 56 F.4th at 384–85.

In *Davis*, 99 F.4th at 659, the Fourth Circuit said: "District courts are not required to acknowledge and address each of the defendant's arguments on the record when conducting a § 3553(a) analysis." But, "'the record as a whole'" must demonstrate that the judge considered the parties' contentions and had "'a reasoned basis'" for the exercise of judicial discretion. *Malone*, 57 F.4th at 176 (citations omitted); *see also Davis*, 99 F.4th at 659; *United States v. Puzey*, 2023 WL 2985127, at *2 (4th Cir. Apr. 18, 2023) (per curiam).

In particular, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190). And, a district court abuses its discretion when it "act[s] arbitrarily or irrationally," "fail[s] to consider judicially recognized factors constraining its exercise of discretion," "relie[s] on erroneous factual or legal premises," or "commit[s] an error of law." *High*, 997 F.3d at 187 (internal quotation marks omitted); *see Jenkins*, 22 F.4th at 167; *see also Brown*, 78 F.4th at 132 (criticizing district judge's "cursory" consideration of the § 3553(a) factors); *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018).

"How much explanation is 'enough' depends on the complexity of a given case." *Gutierrez*, 2023 WL 245001, at *3; *see United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021). For example, "when a defendant 'present[s] a significant amount of post-sentencing mitigation evidence, . . . a more robust and detailed explanation [is] required.'" *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190) (alterations in *Cohen*).

In any event, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *Cohen*, 2022 WL 2314300, at *1 (quoting *High*, 997 F.3d at 190). And, a more detailed explanation may be required if a substantial change in the law creates a disparity between the sentence a defendant actually received and the sentence he would receive, if sentenced under current law. *See Davis*, 99 F.4th at 661; *see* 18 U.S.C. § 3553(a)(6) (directing a court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."); *see Moody*, 115 F.4th at 310 (recognizing that a defendant may not "challenge the validity of a sentence in a compassionate release" motion but explaining that a court may consider whether a defendant's sentence would be shorter "because of changes in law."). In explaining its compassionate release ruling, "a district court is permitted to add to its original, sentencing-phase consideration of the § 3553(a) factors . . . ." *Bethea*, 54 F.4th at 834; *see Kibble*, 992 F.3d at 332.

*Davis*, 99 F.4th 647, is informative. The Court recognized that a change in the Guidelines or the law can produce a sentencing disparity under § 3553(a)(6). *Id.* at 654–55. And, the Court observed that changes in the law since the defendant's sentencing "would [have] lower[ed] [the defendant's] guidelines range from a 188–235 months range to [a] 92–115 months range." *Id.* at 661. According to the Court, if the defendant were sentenced under current Guidelines, "it is very likely that [the defendant] would already be out of prison." *Id.* The Court stated, *id.*: "That reality alone implicates one of the applicable sentencing factors: 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id.* (quoting 18 U.S.C. § 3553(a)(6)). The Court concluded that the district court was obligated to provide a "detailed explanation" of its § 3553(a) analysis, because "[t]his

sentence disparity is so stark, and the change in law so substantial." *Davis*, 99 F.4th at 661 (citing *Chavez-Meza v. United States*, 585 U.S. 109, 119 (2018)).

### B.  Amendment 821

Section 3582(c)(2) of 18 U.S.C. permits a court to reduce the sentence of a defendant who was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 924(o)"; if the amendment has been made retroactively applicable, and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*; *see United States v. Moore*, 2024 WL 2828103, at *1 (4th Cir. June 4, 2024) (per curiam); *see United States v. Barrett*, 133 F.4th 280 (4th Cir. 2025); *United States v. Riley*, ELH-13-0608, 2022 WL 9361679, at *5 (D. Md. Oct. 14, 2022) (citing *Dillon v. United States*, 560 U.S. 817, 826 (2010)); *see also* U.S.S.G. § 1B1.10(a)(2)(B) (providing that a defendant is not eligible for a sentence reduction if the retroactively applicable amendment "does not have the effect of lowering the defendant's applicable guidelines range"). The court may reduce such a sentence only "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

One policy statement provides that courts may not reduce a sentence "to a term that is less than the minimum of the amended guideline range" unless the defendant's original sentence resulted from a downward departure based upon substantial assistance to government authorities. U.S.S.G. § 1B1.10(b)(2); *United States v. Dunphy*, 551 F.3d 247, 252 (4th Cir. 2009) (holding that

§ 1B1.10 is "a jurisdictional bar to reducing sentences below the range authorized by the Commission").

The Fourth Circuit has said that district courts must employ a two-step approach in considering 3582(c)(2) motions. "First, a court must determine the defendant's eligibility. Section 3582(c)(2) permits a reduction only if (1) the defendant's 'term of imprisonment [was] based on a

sentencing range that has subsequently been lowered by the Sentencing Commission,' and (2) the reduction 'is consistent with applicable policy statements issued by the Sentencing Commission.' § 3582(c)(2). Second, the court may grant the authorized reduction 'after considering the factors set forth in section 3553(a) to the extent that they are applicable.'" *United States v. Peters*, 843 F.3d 572, 574 (4th Cir. 2016) (citing § 3582(c)(2)). "The ultimate decision of '[w]hether to reduce a sentence and to what extent' is committed to the district court's discretion." *Id.*

One such retroactive amendment is Amendment 821 to the Guidelines. It went into effect on November 1, 2023. *Amendment 821*, U.S. SENT'G COMM'N, https://www.ussc.gov/ guidelines/amendment/821. Amendment 821 "is a multi-part amendment." *United States v. Gary*, JKB-08-086, 2024 WL 1641007, at *1 (D. Md. Apr. 16, 2024).

Part A of Amendment 821 pertains to criminal history and so called "status points." *Id.* It amended U.S.S.G. § 4A1.1 "by redesignating subsection (d) as subsection (e) and reducing the additional criminal history points assessed to a defendant who committed his offense while under a criminal justice sentence." *Moore*, 2024 WL 2828103, at *1; *see Barrett*, 133 F.4th at 282-83. "Criminal justice sentence" under the Guidelines includes probation, parole, supervised release, imprisonment, work release or escape status. U.S.S.G. § 4A1.1(e).

Prior to Amendment 821, two points were added to a defendant's criminal history score if the defendant committed the underlying offense while on parole, probation, or supervised release (previously codified at U.S.S.G. § 4A1.1(d)). But, Amendment 821 limits the assignment of

such "status points." *See* U.S.S.G. § 4A1.1(e).  It permits the assignment of only one status

point, and then only if a defendant has seven or more criminal history points.  *See* U.S.S.G. §

4A1.1(e).  In other words, the amendment eliminates any status points for a defendant who "has

six or fewer criminal history points."  *Id.*; *see also United States v. Law*, DKC-11-489, 2024 WL

3757902, at *1 (D. Md. Aug. 12, 2024) ("Part A . . . eliminated status points altogether for a

defendant with six or fewer criminal history points.").

"The Sentencing Commission gave retroactive effect to the amended

Guideline . . . beginning on February 1, 2024."  *Moore*, 2024 WL 2828103, at *1; *see Barrett*,

133 F.4th at 283.  So, under the new provision, U.S.S.G. § 4A1.1(e), only one "status point" is

assessed, and only for those with seven or more criminal history points.

Part B provides for a decrease of two offense levels if ten conditions are met.  *See*

U.S.S.G. § 4C1.1(a).  They are, *id.*:

> **(1)** the defendant did not receive any criminal history points from Chapter
> Four, Part A;
> **(2)** the defendant did not receive an adjustment under § 3A1.4 (Terrorism);
> **(3)** the defendant did not use violence or credible threats of violence in
> connection with the offense;
> **(4)** the offense did not result in death or serious bodily injury;
> **(5)** the instant offense of conviction is not a sex offense;
> **(6)** the defendant did not personally cause substantial financial hardship;
> **(7)** the defendant did not possess, receive, purchase, transport, transfer,
> sell, or otherwise dispose of a firearm or other dangerous weapon (or
> induce another participant to do so) in connection with the offense;
> **(8)** the instant offense of conviction is not covered by § 2H1.1 (Offenses
> Involving Individual Rights);
> **(9)** the defendant did not receive an adjustment under § 3A1.1 (Hate
> Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human
> Rights Offense); and
> **(10)** the defendant did not receive an adjustment under § 3B1.1
> (Aggravating Role) and was not engaged in a continuing criminal
> enterprise, as defined in 21 U.S.C. 848[.]

### III.  Discussion

19

## A. Amendment 821

Defendant's sentencing range has not been lowered by the Sentencing Commission.  At sentencing, Taylor had 12 criminal history points, and he received two additional  "status points" under former § 4A1.1(d) of the Guidelines.  This resulted in 14 criminal history points.  But, pursuant to Amendment 821, Taylor would now receive only one "status point."  This would yield a criminal history score of 13 points.  Whether defendant has 13 points or 14 criminal history points is of no significance, because both result in a criminal history category of VI.

In any event, Taylor's Guidelines were not based on his criminal history category. Rather, the Guidelines corresponded to the mandatory minimum term required by statute, *i.e.* 5 years. *See* U.S.S.G. § 2K2.4(b); ECF 42, ¶¶ 16, 73–74.

Amendment 821 does not benefit Taylor.  It does not have the effect of lowering Taylor's Guidelines range.  Therefore, he is ineligible for relief. U.S.S.G. § 1B1.10(a)(2)(B); *United States v. Nickens*, 668 F. App'x 20, 21 (4th Cir. 2016) (defendant not eligible for reduction where amendment does not have the effect of lowering applicable range); *United States v. Williams*, Crim. No. 2:20-cr-01-01, 2024 WL 947841 (S.D.W.V. Mar. 5, 2024) (defendant ineligible for a sentence reduction under Amendment 821 where guidelines range was "the result of his classification as a career offender").

## B. Compassionate Release

Taylor seeks compassionate release on the ground that the caregiver of his minor child has died and he is the only available caregiver for his child.  *See* ECF 45 at 4: *see also* U.S.S.G. § 1B1.13 cmt. N.1(C) (providing that "[t]he death or incapacitation of the caregiver of the defendant's minor child or children" may be considered an adequate reason for a sentence reduction).  However, defendant provides no support for this proposition.

In a letter submitted with his Motion, Taylor explains that the mother of his ten-year-old daughter, M.T., was killed on May 5, 2019. ECF 45-1 at 1. That unfortunate occurrence took place about three years before Taylor was sentenced in this case. The sentence that was imposed undoubtedly considered defendant's personal history. Moreover, the letters submitted with defendant's Motion indicate that Taylor's mother and fiancée are caring for his daughter while he is incarcerated. *See* ECF 45-1 at 3-5.

On this basis, the government contends that the circumstance does not qualify as an extraordinary and compelling reason for compassionate release. ECF 50 at 5.

Taylor also contends that "drug trafficking is not a crime of violence" and therefore he "should not have the 924C." ECF 45 at 5. However, Taylor pleaded guilty to possession of a firearm in furtherance of a drug trafficking crime, not a crime of violence. *See* ECF 37. As part of defendant's guilty plea, he admitted that he possessed the firearm in furtherance of a conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846. ECF 37 at 9-10. And, drug conspiracy under 21 U.S.C. § 846 is a proper predicate because it qualifies as a drug trafficking crime for purposes of 18 U.S.C. § 924(c). *See United States v. Clanton*, 2022 WL 2555973, at *1 n.2 (4th Cir. Mar. 29, 2022), *cert. denied*, 143 S. Ct. 252 (2022); *Suggs v. United States*, 2:20cr77, 2023 WL 2352929, at *4 (E.D. Va. Mar. 3, 2023).

I agree with the government that defendant's contention that the § 924(c) conviction is based on an improper predicate does not fall within the ambit of the compassionate release statue. As the Fourth Circuit has said, "§ 2255 is the exclusive remedy of collaterally attacking a federal conviction or sentence," and "a criminal defendant is foreclosed from the use of another mechanism, such as compassionate release, to sidestep § 2255's requirements." *Ferguson*, 55 F.4th at 270; *see also id.* at 272 ("[W]e hold that a compassionate release motion cannot be used

to challenge the validity of a defendant's conviction or sentence."). And, "no matter how an inmate characterizes his request for relief, the substance of that request controls." *Id.* at 270. "If in substance [defendant] attacks his conviction and/or sentence, his filing is subject to the rules set forth in § 2255." *Id.*

As mentioned, defendant also seeks compassionate release due to the death of the mother of his minor child. ECF 45 at 4. That tragic event occurred before defendant was sentenced.

U.S.S.G. § 1B1.13(b)(3) states (emphasis added):

(3) Family Circumstances of the Defendant.--

(A) *The death or incapacitation of the caregiver of the defendant's minor child* or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.
(B) The incapacitation of the defendant's spouse or registered partner when *the defendant would be the only available caregiver for the spouse or registered partner*.
(C) The incapacitation of the defendant's parent when *the defendant would be the only available caregiver for the parent*.
(D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when *the defendant would be the only available caregiver for such family member or individual*. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

Under the Guidelines, a defendant can establish an "extraordinary and compelling" circumstance based on the "*death or incapacitation of the caregiver of the defendant's minor child* or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition." U.S.S.G. § 1B1.13(b)(3)(A) (emphasis added). The plain language of the Guidelines does not require a defendant to demonstrate that there are no other available caregivers for a minor child.

Prior to November 2023, when addressing motions for compassionate release based on similar circumstances, most courts considered whether there were alternative caregivers. *See, e.g.*, *United States v. Mathews*, No. 2:19-CR-41, 2023 WL 5924411, at *3 (S.D. Ohio Sept. 12, 2023), *reconsideration denied*, No. 2:19-CR-41, 2024 WL 495539 (S.D. Ohio Feb. 8, 2024); *United States v. Lemon*, No. 4:16-cr-0239, 2021 WL 1060142, at *2 (N.D. Ohio Mar. 18, 2021); *United States v. Cole*, No. CR 18-20237, 2021 WL 194194, at *2 (E.D. Mich. Jan. 20, 2021); *United States v. Simmons*, No. CR 15-0025 (PLF), 2021 WL 5074741, at *5 (D.D.C. Nov. 2, 2021) (citing cases); *United States v. Pearson*, No. CR 16-20601, 2020 WL 7706618, at *4 (E.D. Mich. Dec. 29, 2020); *United States v. Delgado*, No. 3:15-CR-246, 2023 WL 4552890, at *2 (M.D. Pa. July 14, 2023); *United States v. Rivera*, No. CR 15-2990 RB, 2021 WL 6062828, at *2–3 (D.N.M. Dec. 22, 2021); *United States v. Cruz-Rivera*, No. CR 11-43, 2020 WL 5993352, at *7 (E.D. Pa. Oct. 9, 2020). Courts placed the burden on the defendant to prove that other caregivers were not available or suitable. *See, e.g.*, *Mathews*, 2023 WL 5924411, at *3; *Lemon*, 2021 WL 1060142, at *2; *Delgado*, 2023 WL 4552890, at *2; *Cruz-Rivera*, 2020 WL 5993352, at *7.

As stated, U.S.S.G. § 1B1.13(b)(3)(A) defines an "extraordinary and compelling" circumstance as the "*death or incapacitation of the caregiver of the defendant's minor child* or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition." (Emphasis added). No requirement is mentioned with respect to alternative caregivers. In contrast, all three of the other "extraordinary and compelling" family circumstances set forth in § 1B1.13.(b)(3) require the defendant to establish that there is no available caregiver.

Section 1B1.13(b)(3)(A) is not ambiguous.  If the Sentencing Commission sought to limit section 1B1.13(b)(3)(A)'s applicability to circumstances where the defendant is the only available caregiver, it would have said so.  This Court must construe the words of the Sentencing Guidelines in accordance with their ordinary meaning.  *See United States v. Boler*, 115 F.4th 316, 323-24 (4th Cir.); *United States v. Haas*, 986 F.3d 467, 480 (4th Cir. 2021).  I cannot import a requirement that the Sentencing Commission failed to include.

I am not aware of any reported Fourth Circuit case that has addressed this issue.  But, several other courts have recognized that, as to the death of the caregiver of the defendant's minor child, the defendant need not establish that he is the only available caregiver.  *See United States v. Lanphear*, No. CR 19-19-BLG-SPW, 2024 WL 97369, at *2 (D. Mont. Jan. 9, 2024) (stating that "because VanderRoest was the caregiver of [the defendant]'s minor child at the time of his death and *there is no requirement that the defendant be the child's only available caregiver*, VanderRoest's death qualifies as an extraordinary and compelling reason under § 1B1.13.") (emphasis added); *United States v. Lou*, No. 05 CR 514, 2023 WL 2499878, at *2 (N.D. Ill. Mar. 14, 2023) ("That analysis ignores the express terms of the provision.  It is the death or incapacitation of the caregiver that is extraordinary and compelling, not only the threat of foster care."); *United States v. Turner*, No. 18-CR-142, 2020 WL 5717096, at *4 (E.D. Wis. Sept. 24, 2020) ("I see no requirement in the guideline or the statute that defendant also demonstrate that he is the only available care-giver for his daughter.").

M.T. is a minor; she is defendant's child; her mother died.  Defendant has established an extraordinary and compelling reason for compassionate release.  But, this does not end the Court's inquiry.

The Court must next consider the sentencing factors under 18 U.S.C. § 3553(a), "to the extent those factors are applicable." *Bethea*, 54 F.4th at 831; *see Malone*, 57 F.4th at 174; *Hargrove*, 30 F.4th at 194; *High*, 997 F.3d at 186; *Kibble*, 992 F.3d at 330. These factors include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

As the judge assigned to this case at its inception, I am very familiar with the facts. *See*, *e.g.*, *Bethea*, 54 F.4th at 834. Defendant's conduct was extremely serious. Congress has expressed its view that the offense carries a mandatory minimum term of imprisonment of five years, with a maximum term of life imprisonment. At sentencing, the Court imposed the agreed upon sentence of 120 months of incarceration, pursuant to Fed. R. Crim. P. 11(c)(1)(C).

As part of defendant's Plea Agreement, he stipulated that "he possessed the firearm in furtherance of a drug trafficking crime, namely, conspiracy to distribute cocaine . . . ." ECF 37 at 10. Defendant was initially charged with possession of a firearm by a felon, under 18 U.S.C. § 922(g). ECF 1. The government did not insist on a plea to that offense, because defendant might have qualified as an Armed Career Criminal. If so, he would have faced a mandatory minimum sentence of incarceration of fifteen years under 18 U.S.C. § 924(c). Pursuant to the Plea Agreement, defendant avoided the prospect of a far lengthier sentence.

The second § 3553(a)(1) factor—defendant's personal history—is troubling, and weighs against release. According to the PSR, defendant was 29 years old at sentencing. ECF 42 at 3. By then, he had compiled a serious criminal record. He committed his first felony drug offense

at age 18.  *Id.* ¶ 19.  As reviewed earlier, he received a twelve-year sentence in March 2012, but almost all of it was suspended.  *Id.*  He received an unsatisfactory closing of probation.  *Id.*  He committed another felony drug offense in May 2014.  *Id.* ¶ 20.  He received a ten-year sentence. *Id.*  Again, almost all of it was suspended.  *Id.*  He violated his probation when he committed two separate felony drug offenses, both in March 2015.  *Id.* ¶¶ 21, 22; *see id.* ¶ 20.  Defendant received sentences of fifteen years for those offenses, with all but three years suspended.  *Id.* ¶¶ 21, 22.  And, in Maryland, a defendant is generally eligible for parole after serving only a portion of a sentence.  Defendant also committed a felony drug offense in December 2015 and received a one-year sentence in December of 2016.  *Id.* ¶ 23.  And, he was sentenced to one year and one day in 2017 for the offense of possession of CDS while incarcerated.  *Id.* ¶ 24.

Despite defendant's many prior offenses, the criminal justice system was very lenient with him.  Yet, leniency was not effective in persuading defendant to become a law abiding citizen.  Defendant's prior interaction with the criminal justice system did not deter him from engaging in the serious criminal conduct that culminated in his prosecution in this case.

That said, where appropriate, the district court "must account not only for the circumstances at the time of the original offense but also for significant post-sentencing developments."  *United States v. Mangarella*, 57 F.4th 200, 203 (4th Cir. 2023); *see United States v. Martin*, 916 F.3d 389, 397 (4th Cir. 2019); *Kibble*, 992 F.3d at 334 n.3.  Courts place significant weight on a defendant's post-sentencing conduct because it "provides the most up-to-date picture of [his] 'history and characteristics.'"  *Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)).  The court must "at least weigh the [defendant's] conduct in the years since the[] initial sentencing[]."  *McDonald*, 986 F.3d at 412; *see Martin,* 916 F.3d at 397 (requiring an "individualized explanation" as to rehabilitative efforts).  A defendant's

behavior while in BOP custody is an important indicator of whether he remains a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A)(ii).

Rehabilitation efforts should be considered in regard to a motion for compassionate release. *See United States v. Lancaster*, 997 F.3d 171, 175 (2021) ("And in considering the § 3553(a) factors, the court can take into account a defendant's conduct after his initial sentencing."); *McDonald*, 986 F.3d at 410–12 (noting that on a motion to reduce sentence under the First Step Act, the district court must consider defendant's post-sentencing conduct); *United States v. Randall*, 837 Fed. App'x 1008, 1009 (4th Cir. 2021) ("[A] district court must provide an individualized explanation for denying a sentence reduction motion under the First Step Act when the defendant presents evidence of his post-sentencing rehabilitation."); *United States v. Rudisill*, 834 Fed. App'x 827, 829 (4th Cir. 2021) (finding district judge abused his discretion in denying motion under the First Step Act without addressing defendant's post-sentencing conduct). However, rehabilitation alone does not warrant a defendant's immediate release. *See United States v. Davis*, No. 21-6960, 2022 WL 127900, at *1 (4th Cir. Jan. 13, 2022) ("[R]ehabilitation alone cannot constitute an extraordinary and compelling reason for release.").

To defendant's credit, he claims to have "completed multiple programs such as drug education, trauma, anger management . . . ." ECF 45-1 at 1. He also asserts that he has worked for almost 18 months. *Id.* And, he apologizes for his conduct. *Id.* at 2. He also has the support of his family and friends. *See id.* at 3-7. The government has not reported any disciplinary infractions.

Defendant was sentenced to ten years of incarceration, with credit from May 1, 2019, to November 5, 2019, and November 12, 2020, to June 4, 2022. ECF 43. Given the serious facts of the offense, involving drugs and a gun, coupled with the defendant's prior criminal history, I

am of the view that a time-served sentence under 18 U.S.C. § 3582(c)(1)(A) would seriously undermine respect for the law.  However, the First Step Act "does not constrain the Court to decide between immediate release or no reduction at all, and instead leaves the Court discretion in its evaluation of the appropriate sentence once it finds 'extraordinary and compelling reasons.'"  *United States v. Braxton*, JKB-09-478, 2020 WL 4748536, at *5 (D. Md. Aug. 17, 2020).  Accordingly, the Court's decision need not be confined either to immediate release or leaving the existing sentence intact.  The statutory text of the First Step Act allows courts to "reduce the term of imprisonment" upon a finding of "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A).

Numerous district courts in this Circuit and elsewhere have granted sentence reductions without immediate release.  *See, e.g.*, *United States v. Johnson*, RDB-07-0153, 2020 WL 6063733, at *5 (D. Md. Oct. 14, 2020) (reducing sentence from 360 months to 300 months); *Braxton*, 2020 WL 4748536, at *5 (reducing sentence from 246 months to 168 months); *United States v. Marks*, 455 F. Supp. 3d 17, 37–38 (W.D.N.Y. 2020) (reducing sentence from 40 years to 20 years); *United States v. Arey*, Crim. No. 5:05-00029, 461 F. Supp. 3d 343, 2020 WL 2464796 (W.D. Va. May 13, 2020) (reducing sentence but denying immediate release); *United States v. Day*, 474 F. Supp. 3d 790 (E.D. Va. 2020) (same); *see also United States v. Zullo*, 976 F.3d 228, 327 (2d Cir. 2020) ("It bears remembering that compassionate release is a misnomer.  18 U.S.C. § 3582(c)(1)(A) in fact speaks of sentence reductions. A district court could, for instance, reduce but not eliminate a defendant's prison sentence . . . .").

As I see it, defendant's immediate release is not warranted.  His crime in the instant case was extremely serious and his criminal record is disturbing.  On the other hand, defendant appears to have made strides towards rehabilitation. Moreover, and of import, defendant has

already served a sentence longer than any prior sentence he ever served. The Court believes that a sentence reduction of twelve months is appropriate.

## IV. Conclusion

I conclude that the factors under 18 U.S.C. § 3553(a) weigh in favor of a twelve-month sentence reduction. Defendant's sentence shall be reduced from 120 months to 108 months of incarceration, with credit for time served.

An Order follows, consistent with this Memorandum Opinion.

Date:  May 27, 2025                    _____/s/_____
                                       Ellen Lipton Hollander
                                       United States District Judge